# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| **UNIFIED MESSAGING SOLUTIONS LLC,** | |
| **Plaintiff** | **CIVIL ACTION NO.  6:11cv464** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **GOOGLE INC., AMERICAN AIRLINES, INC., AOL INC., AT&T SERVICES, INC., AT&T MOBILITY LLC F/K/A CINGULAR WIRELESS LLC, CITIGROUP INC., CITIBANK, N.A., CONN'S, INC., CONN'S APPLIANCES, INC., DELL INC., EBAY INC., SABRE HOLDINGS CORP., TRAVELOCITY.COM LP, TIME WARNER CABLE INC., TWITTER INC., AND YAHOO! INC.,** | |
| **Defendants.** | |

### DEFENDANT DELL INC.'S MOTION TO SEVER AND TRANSFER

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTS ..................................................................................................................... 1

    A.   UMS Asserts Infringement Against Ten Unrelated Defendants with Ten
         Unrelated Accused Technologies ............................................................. 1

    B.   UMS Has No Meaningful Connection in this District Except to File
         Lawsuits ........................................................................................................ 2

    C.   The Witnesses and Documents Pertaining to Dell's Accused Products Are
         Located in the Western District of Texas ................................................. 3

III.  THE COURT MUST SEVER UMS' CLAIMS AGAINST DELL BECAUSE
      UMS FAILS TO MEET THE REQUIREMENTS FOR PROPER JOINDER OF
      MULTIPLE DEFENDANTS UNDER RULE 20(A)(2) ................................... 3

    A.   The Relevant Legal Standard ..................................................................... 3

    B.   UMS's Claims Against Dell Are Not "Transactionally Related" to Its
         Claims Against the Other Defendants Because Each Defendant Is a
         Separate Company That Independently Made and Provided the Accused
         Products ......................................................................................................... 4

    C.   Severance is Required Here Because UMS's Claims Against Dell Share
         No Common Questions of Law or Fact with the Other Defendants ..................... 6

    D.   Severance Is in the Interests of Justice in this Case Because Joinder
         Subjects Dell to Prejudice and Prevents Dell from Proceeding in a More
         Convenient Forum ..................................................................................... 7

IV.   THE COURT SHOULD ORDER TRANSFER TO THE WESTERN DISTRICT
      BECAUSE THE BALANCE OF PUBLIC AND PRIVATE FACTORS
      CLEARLY FAVORS TRANSFER ..................................................................... 8

    A.   The Legal Standard for Transfer ................................................................ 8

    B.   The Private Interest Factors Strongly Favor Transfer ............................. 9

        1.   The cost of attendance for willing witnesses is lower in the
             Western District because the vast majority of witnesses are located
             at Dell headquarters in the Austin area ..................................... 9

        2.   Access to sources of proof is easier in the Western District of
             Texas ...................................................................................... 10

        3.   The availability of compulsory process to secure the attendance of
             witnesses is neutral ................................................................ 11

        4.   The fourth private interest factor concerning presence of "practical
             problems" is neutral ................................................................. 11

    C.   The Four Public Interest Factors Strongly Favor Transfer ................. 13

1.    The Western District of Texas has a strong interest in deciding this dispute ...................................................................................... 13

2.    The administrative difficulties flowing from court congestion favor transfer because the median time to trial is faster in the Western District........................................................................................................ 14

3.    The remaining two public interest factors are neutral ............................ 14

D.    On Balance, the Transfer Analysis Factors Strongly Favor Transfer to the Western District of Texas .................................................................................... 15

V.    CONCLUSION................................................................................................................ 15

27269\2949121.4

<u>**TABLE OF AUTHORITIES**</u>

**Page**

**FEDERAL CASES**

*Acumed LLC v. Stryker Corp.,*
    525 F.3d 1319 (Fed. Cir. 2008)......................................................................................... 4, 5

*Adrain v. Genetic Inc.,*
    2009 WL 3063414 (E.D. Tex. Sep. 22, 2009) ...................................................................... 4

*Androphy v. Smith & Nephew, Inc.,*
    31 F. Supp. 2d 620 (N.D. Ill. 1998) ..................................................................................... 4

*Apache Prods. Co. v. Emp'rs Ins. of Wausau,*
    154 F.R.D. 650 (S.D. Miss. 1994) ........................................................................................ 8

*Balthasar Online, Inc. v. Network Solutions, LLC,*
    654 F. Supp. 2d 546 (E.D. Tex. 2009) .................................................................................. 9

*Carver v. Knox County, Tenn.,*
    887 F.2d 1287 (6th Cir. 1989) .............................................................................................. 7

*Cont'l Grain Co. v. FBL-585,*
    364 U.S. 19 (1960)............................................................................................................... 11

*Coughlin v. Rogers,*
    130 F.3d 1348 (9th Cir. 1997) .............................................................................................. 5

*Crockett v. R.J. Reynolds Tobacco Co.,*
    436 F.3d 529 (5th Cir. 2006) ................................................................................................ 4

*Delce v. Amtrak & Resco Holdings, Inc.,*
    180 F.R.D. 316 (E.D. Tex. 1998)......................................................................................... 4

*Hanley v. First Investors Corp.,*
    151 F.R.D. 76 (E.D. Tex. 1993)........................................................................................... 6

*Henderson v. AT&T Corp.,*
    918 F. Supp. 1059 (S.D. Tex. 1996) ................................................................................. 7, 8

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009)....................................................................... 10, 11, 14, 15

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003) .............................................................................................. 12

*In re Nintendo Co., Ltd.,*
    589 F.3d 1194 (Fed. Cir. 2009)............................................................................................ 9

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008)............................................................................................ 8

*In re Verizon Business Network Servs., Inc.,*
   635 F.3d 559 (Fed. Cir. 2011) ........................................................................................... 8, 15

*In re Vistaprint Ltd.,*
   628 F.3d 1342 (Fed. Cir. 2010) ........................................................................................ 12, 13

*In re Volkswagen of American,*
   545 F.3d 304 (5th Cir. 2008) ............................................................................................... 8, 9

*Innovative Global Systems LLC v. OnStar LLC,*
   Case No. 6:10-cv-574 (E.D. Tex. Feb. 14, 2012) ........................................................... 12, 13

*Joao Control & Monitoring Systems of California, LLC v. ACTI Corp. Inc., et al.,*
   No. 8:10-cv-01909, 2011 WL 1519277 (C.D. Cal. Apr. 19, 2011) .......................................... 5

*MyMail, Ltd. v. American Online, Inc.,*
   223 F.R.D. 455 (E.D. Tex. 2004) ............................................................................................ 6

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   564 F. Supp. 1358 (D. Del. 1983) ....................................................................................... 5, 7

*Promote Innovation LLC v. Ortho-McNeil Pharmaceutical, LLC,*
   No. 2:10-CV-109 (E.D. Tex. Jan. 12, 2011) ......................................................................... 11

*Promote Innovation LLC v. Schering Corp.,*
   2011 WL 665817 (E.D. Tex. Feb. 14, 2011) ........................................................................ 11

*Rudd v. Lux Prods. Corp. Emerson Climate Technology Braeburn Systems LLC,*
   2011 WL 148052 (N.D. Ill. Jan. 12, 2011) .......................................................................... 5, 7

*WiAV Networks, LLC v. 3COM Corp.,*
   2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) ........................................................................... 6

## FEDERAL STATUTES

28 U.S.C.
   §1404(a) ............................................................................................................................ 1, 8, 9

35 U.S.C.
   § 299 .................................................................................................................................... 5, 8

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P.
   20(a)(2) .......................................................................................................................... passim
   21 ............................................................................................................................................. 1

## TREATISES

8 DONALD S. CHISUM,  CHISUM ON PATENTS,
   § 21.03[6][a] (2005) ............................................................................................................... 4

27269\2949121.4

Pursuant to Federal Rule of Civil Procedure 20(a)(2) and 21, Defendant Dell Inc. ("Dell") moves to sever Unified Messaging Solutions LLC's ("UMS") claims against Dell and, pursuant to 28 U.S.C. § 1404(a), moves to transfer those claims to the Western District of Texas.

## I.   INTRODUCTION

UMS tethers this diverse group of ten defendants and ten different accused products together based solely on the theory that they infringe the same five patents.  UMS does not allege that the defendants have committed common acts of infringement, or that the defendants make, use, or provide common products, or that the defendants have any relation to one another.  Under these circumstances, joinder of multiple defendants is improper under Rule 20(a)(2).  Severance is also warranted under Rule 21 because joinder subjects Dell to unfair prejudice and prevents litigation in a more convenient forum.

After severance, the Court should transfer UMS's claims against Dell to the Western District of Texas where Dell's accused technologies are developed and maintained.  Most of Dell's witnesses and documents are located in Round Rock, Texas, and none of Dell's sources of proof are located in this District.  Moreover, UMS does not have any meaningful connection to this district.  Although UMS claims to have a place of business in Frisco, Texas, UMS shares the same address and suite number with eight other businesses.  There is no evidence that UMS conducts any business in this District other than filing lawsuits.

For these reasons, Dell respectfully requests that the Court sever UMS' claims against Dell and transfer them to the Western District of Texas.

## II.  FACTS

### A.   UMS Asserts Infringement Against Ten Unrelated Defendants with Ten Unrelated Accused Technologies.

UMS filed its complaint against Dell and nine other defendants on September 7, 2011,

alleging infringement of five patents: U.S. Patent Nos. 6,857,074; 7,836,141; 7,895,306; 7,895,313; and 7,934,148 (collectively, "the patents-in-suit").  (Complaint ("Compl.") ¶¶ 26, 31, 36, 41, 46).  UMS alleges that two features of Dell's websites—the "Recent Orders" feature on dell.com and the messaging function on Dell's Community site—infringe fifty-eight claims of the patents-in-suit.  (UMS P.R. 3-1 contentions, Exhs. A, 1–5).  The Recent Orders feature allows customers to view their recent orders and the shipping status of those orders.  (Jones Decl. ¶ 8).  The Community feature encourages Internet users to post comments about Dell products and services and to find technical support information for products online.  (Horwedel Decl. ¶ 9).  Within Community, one feature allows  registered users to directly send a message to another registered user.  *Id.*  The ten defendants are entirely unrelated to one another, and the accused products are not related in any manner.  UMS does not allege that any of the ten co-defendants coordinate or cooperate to offer the accused products.

### B.    UMS Has No Meaningful Connection in this District Except to File Lawsuits.

UMS claims to have a principal place of business in Frisco, Texas, at 6136 Frisco Square Boulevard, Suite 385.  (UMS Corporate Filing, Mar Decl. Exh. A).  However, records with the Texas Secretary of State indicate that UMS shares that suite with at least the following eight other businesses: Criminal Activity Surveillance LLC; MCM Dirtworks, LLC; Content Interactive LLC; Aldav LLC; Teleconference Systems LLC; Manuel Exclusive Inc.; MEIC Inc.; and Manuel Designs, LLC.  (Mar Decl. Exh. B).

UMS has not identified a single potential witness who resides in the Eastern District of Texas.  The sole inventor of all five patents-in-suit, Charles Bobo II, resides in Atlanta, Georgia.  (UMS Disclosures, Mar Decl. Exh. A).  UMS identifies only one person with knowledge of the assignment history of the patents-in-suit, Jeff Adelman, and he resides in Los Angeles, California.  The lead attorney who prosecuted the applications leading to the patents-in-suit is

apparently based in Washington, D.C.  (Mar Decl. ¶ 9).  The only person UMS identifies with

knowledge of UMS's corporate matters, David White, is employed by UMS's parent company

Acacia Research Group LLC ("Acacia"), and all publicly available information indicates that he

works from Acacia's office in Newport Beach, California.  (Mar Decl. ¶¶ 5–6, Exhs. D, E).

### C.   The Witnesses and Documents Pertaining to Dell's Accused Products Are Located in the Western District of Texas.

Nearly all the relevant evidence and witnesses regarding Dell's accused services are

located at Dell's corporate headquarters in Round Rock, Texas in the Western District.  UMS's

P.R. 3-1 infringement contentions accuse the My Community and the Recent Orders features on

Dell's website.  (*See* UMS P.R. 3-1 contentions, Exhs. 1–5).  The Recent Orders feature was

developed and is implemented by Dell employees in Round Rock, Texas.  (Jones Decl., ¶¶ 3–4).

The employees responsible for maintaining and operating the Recent Orders feature are also

located in Round Rock.  *Id.*  Similarly, the accused My Community feature is maintained by

employees in Round Rock.[1]  (Horwedel Decl. ¶ 4–5).  Most of the technical, marketing, and

design documents for both features are located in Round Rock, none of the documents are

located in the Eastern District of Texas, and all six of the likely witnesses Dell identified in its

initial disclosures work in Round Rock.  (*See* Horwedel Decl. ¶ 5; Jones Decl. ¶¶ 5–6).

### III.   THE COURT MUST SEVER UMS' CLAIMS AGAINST DELL BECAUSE UMS FAILS TO MEET THE REQUIREMENTS FOR PROPER JOINDER OF MULTIPLE DEFENDANTS UNDER RULE 20(a)(2).

### A.   The Relevant Legal Standard.

Under Fed. R. Civ. P. 20(a)(2), severance is required if UMS fails to establish that (a) any

right to relief is asserted against all the defendants jointly, severally, or in the alternative with

---

[1] Some of the technology supporting My Community was developed and originally sold to Dell by third-party supplier Lithium Technologies, Inc., which is based in Emeryville, California. Dell now purchases this technology from third-party supplier Telligent Systems, Inc., based in Dallas, Texas.  (Horwedel Decl. ¶¶ 3, 7–8).

respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all defendants will arise in the action.  *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) ("If these [Rule 20(a)(2)] requirements are not met, joinder is improper[.]").  Even if joinder is proper under Rule 20(a)(2), severance is still appropriate on "interest of justice" grounds if permitting the joined case to proceed would subject a defendant to undue burden or prejudice, including in the form of an inconvenient forum.  *Delce v. Amtrak & Resco Holdings, Inc.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998) ("[W]here claims are more properly tried in another forum severance is the judicial tool of choice.").

In patent infringement cases, the Federal Circuit has determined that claims are "transactionally related" when they arise from the same "transactional facts." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323–24 (Fed. Cir. 2008).  In the Eastern District, the "transactionally related" test is sometimes referred to as the "logical relationship test."  *See Adrain v. Genetic Inc.*, 2009 WL 3063414, at *2 (E.D. Tex. Sep. 22, 2009) (relating the "logical relationship" test to the first prong of the Rule 20(a) inquiry).

Regardless of the name of the test, the "common transaction requirement" is not met where, as here, the defendants "are separate companies that independently design, manufacture and sell different products in competition with each other." *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *see also* 8 DONALD S. CHISUM,  CHISUM ON PATENTS, § 21.03[6][a] (2005) ("same transaction" test not met when "the only basis for joinder is that [defendants] are engaged in similar acts of infringement.").

**B.      UMS's Claims Against Dell Are Not "Transactionally Related" to Its Claims Against the Other Defendants Because Each Defendant Is a Separate Company That Independently Made and Provided the Accused Products.**

The Court must sever UMS's claims against Dell because UMS's infringement

allegations against the ten defendants do not seek relief jointly or severally, and they do not arise out of the same "transaction, occurrence, or series of transactions or occurrences."  Each defendant is accused of infringement based on its own product.  District courts have followed *Acumed* and Chisum in holding that Rule 20(a)(2) prohibits plaintiffs from joining patent infringement claims against unrelated defendants based on distinct products or acts.  *See, e.g., Joao Control & Monitoring Sys. of California, LLC v. ACTI Corp. Inc., et al.*, No. 8:10-cv-01909, 2011 WL 1519277, at *2 (C.D. Cal. Apr. 19, 2011) (ruling that joinder was improper because "a 'common allegation . . . does not suffice to create a common transaction or occurrence'") (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)); *accord Rudd v. Lux Prods. Corp. Emerson Climate Tech. Braeburn Sys. LLC*, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983).  The recently enacted Smith-Leahy America Invents Act ("AIA") reconfirms this jurisprudence and explicitly prohibits joinder based solely on allegations that the defendants infringed the same patents.[2]  35 U.S.C. § 299.

Here, UMS has improperly joined Dell because the two Dell accused features—Recent Orders on www.dell.com and the messaging function found on Dell's Community website— were independently developed and operated by Dell and its contractors and are not shared with any of the co-defendants.  (Horwedel & Jones Decls., ¶¶ 3).  UMS does not accuse any other defendant of infringing the patents-in-suit through Dell's website features.  Indeed, UMS alleges that the defendants infringe through their "respective web-based communications service(s)."

---

[2] With its strategy of tethering together multiple unrelated defendants in a patent case being eliminated by the AIA, the three firms representing the plaintiff in this case rushed to file a total of nine multi-defendant patent cases in this District in the two weeks preceding the effective date of the AIA.  *See* Mar Decl. at ¶ 11.  This tactic should not be rewarded.

(Compl. ¶ 26.)[3]

UMS also fails to meet the "logical relationship" test as described by Eastern District precedent.  In this District, claims are considered to arise from the same transaction or occurrence for joinder purposes only if there is a "logical relationship" between the various transactions or occurrences.  *See, e.g., Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993).  Claims have a "logical relationship" if they share a "nucleus of operative facts or law."  *Id.*; *see also MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004).[4] UMS's Complaint does not raise a common nucleus of operative facts or law because it lumps together products as dramatically different as Google's Gmail service, Citibank's online bank statement service, and Dell's Recent Orders features that allows a customer to check the status of his order online.  (Compl. ¶¶ 49, 53, and 55, respectively).  The accused products from each defendant do not share any common nucleus of facts—they are developed, operated, and maintained separately by each defendant.  The accused products and services all operate independently of each other, and the Complaint does not connect Dell to any other defendant's conduct.  (Compl.).  Therefore, each allegation against each defendant will imply different factual and legal inquiries and will require separate discovery.

**C.    Severance is Required Here Because UMS's Claims Against Dell Share No Common Questions of Law or Fact with the Other Defendants.**

Joinder is also improper under the second prong of Rule 20(a)(2), which requires that UMS show that there is a "question of law or fact common to all defendants" in this case.  To

---

[3] Nor can UMS satisfy the "transactionally related" test based on the fact that defendants may assert defenses based on the same set of facts, such as an invalidity defense.  "[O]nly a 'right to relief' asserted *by the plaintiff*" satisfies Rule 20(a)(2).  *WiAV Networks, LLC v. 3COM Corp.*, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (emphasis in original).

[4] Congress has indicated that the America Invents Act "legislatively abrogates the construction of Rule 20(a) adopted in *MyMail*" and "effectively conform[s] these courts' jurisprudence to that followed by a majority of jurisdictions."  *See* H.R. Rep. No. 112-98(I), at 55 n.61 (2011).

satisfy this requirement, UMS must show something more than ten unrelated defendants who, through different acts and different products, allegedly infringed its patents. *See, e.g., Rudd*, 2011 WL 148052, at \*3; *Paine*, 564 F. Supp. at 1371.  Even claim construction will not necessarily be a common legal issue in this case, because claim construction "must be adapted to the actual issues being litigated over the varying accused devices." *WiAV Networks*, 2010 WL 3895047, at \*3.  Furthermore, in a case such as this one, where the plaintiff accuses a large group of defendants who provide dramatically different products, it is possible that the defendants will "present individualized assaults on questions of non-infringement." *Id.* at \*2.

UMS has not met either of the requirements for proper joinder under rule 20(a)(2).  UMS has therefore misjoined Dell in this action, and the Court must order severance of the claims asserted against Dell.

### D.  Severance Is in the Interests of Justice in this Case Because Joinder Subjects Dell to Prejudice and Prevents Dell from Proceeding in a More Convenient Forum.

Even if joinder under Rule 20(a)(2) were proper in this case, which it is not, the Court still should order severance under Rule 21 in the interest of justice. *See Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1292–94 (6th Cir. 1989); *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1068 (S.D. Tex. 1996).  Severance on "interest of justice" grounds is particularly appropriate where joinder would both subject a defendant to unfair prejudice and keep that defendant's claims out of a more convenient forum. *See, e.g., Carver*, 887 F.2d at 1291–94 (granting severance and transfer of claims against joined defendants "in the interest of justice"); *Henderson*, 918 F. Supp. at 1067–68 (granting severance and transfer of multiple plaintiffs' claims because they had "no factual connection" to the venue, and defendant was likely to suffer "prejudice" from a "single trial" that would inundate and confuse the jury with excessive and unrelated evidence).  Here, severance in order to facilitate transfer clearly serves the interests of

justice because, as shown below in Dell's motion to transfer, the Western District of Texas is a more convenient forum for Dell and the vast majority of likely witnesses in this case. *See, e.g.*, *In re Verizon Business Network Servs., Inc.*, 635 F.3d 559, 561–62 (Fed. Cir. 2011) (granting mandamus and transferring case from Eastern to Northern District of Texas); *Apache Prods. Co. v. Emp'rs Ins. of Wausau*, 154 F.R.D. 650, 660 (S.D. Miss. 1994) (granting "severance for the purpose of facilitating transfer").

A single trial in this case would require UMS to present evidence pertaining to all ten defendants' distinct acts of alleged infringement, which each relate to different products or services that are dramatically different than one another.  Such a massive trial would likely confuse the jury members, who may not be able to keep ten different defendants and potentially dozens of accused products separate in their minds. *See, e.g., Henderson*, 918 F. Supp. at 1063–65.  The America Invents Act recognized this high likelihood of jury confusion and prohibited the joinder of parties based purely on the fact the defendants allegedly infringe the same patents. 35 U.S.C. §299.  Rule 21 is designed to protect defendants from just this type of prejudice. Therefore, even if the Court finds that joinder is proper in this case under Rule 20(a)(2), the Court nevertheless should order severance in the interest of justice.

## IV. THE COURT SHOULD ORDER TRANSFER TO THE WESTERN DISTRICT BECAUSE THE BALANCE OF PUBLIC AND PRIVATE FACTORS CLEARLY FAVORS TRANSFER.

### A. The Legal Standard for Transfer.

A motion to transfer under 28 U.S.C. § 1404(a) "should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citation omitted).  The Fifth Circuit considers both private and public interest factors in evaluating transfer motions. *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008).  The private factors include: "(1) the

relative ease of access to sources of proof; (2) the availability of compulsory process to secure

the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make the trial of a case easy, expeditious, and inexpensive." *Id.* (citation

omitted). The public interest factors include: "(1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*[5]

### B.   The Private Interest Factors Strongly Favor Transfer.

> 1.   *The cost of attendance for willing witnesses is lower in the Western
> District because the vast majority of witnesses are located at Dell
> headquarters in the Austin area.*

"The convenience and cost of attendance for witnesses is an important factor in the

transfer calculus." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198–99 (Fed. Cir. 2009). The Fifth

Circuit employs the "100-mile" guideline for this factor of the transfer analysis. *In re

Volkswagen*, 545 F.3d at 317. Under the 100-mile guideline, "[w]hen the distance between an

existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles,

the factor of inconvenience to witnesses increases in direct relationship to the additional distance

to be traveled." *Id.* (citation omitted).

Dell's investigation into UMS's allegations at this time indicates that nearly all relevant

Dell witnesses are located in the Austin area (approximately 215 miles from Tyler), and none are

located in this District. (Jones Decl. ¶ 7; Horwedel Decl. ¶ 6). The teams that manage and

---

[5] As a threshold matter, Dell must establish that the action may have been brought in its proposed
transferee forum, the Western District. *See Balthasar Online, Inc. v. Network Solutions, LLC*,
654 F. Supp. 2d 546, 551-52 (E.D. Tex. 2009). However, this is a low bar that requires only that
Dell make a prima facie case for personal jurisdiction in that forum. *See id.* Dell is
headquartered in Texas and therefore subject to personal jurisdiction in the state. Considering
that Dell has not disputed personal jurisdiction in the Eastern District of Texas, personal
jurisdiction is not an issue for another district in the same state.

maintain Dell's Recent Order status are based in Round Rock, in the Austin, Texas area.  (Jones Decl. ¶¶ 3–4).  Similarly, the technical team that manages and maintains the messaging function on Dell's Community site is also located in Round Rock.  (Horwedel Decl. ¶¶ 3–4).  In addition, the procurement team that is responsible for acquiring and licensing the technology necessary to offer the accused services is located in Round Rock, as are the website marketing and promotional teams.  (Jones Decl. ¶ 4; Horwedel Decl. ¶¶ 4–5).

In addition, UMS has admitted that the single inventor of all five patents-in-suit, Charles Bobo II, resides in Atlanta, Georgia.  (UMS Initial Disclosure, Mar Decl., Exh. A.)  The sole person UMS identifies as having knowledge of the assignment history of the patents-in-suit, Jeff Adelman, resides in Los Angeles, California.  *Id.*  And the sole person UMS identifies as having knowledge of UMS's corporate matters, David White, is employed by UMS's parent company Acacia and appears to work in Acacia's office in Newport Beach, California.  (Mar Decl. ¶¶4–6, Exhs. C–E).  Potential third-party witnesses, such as the patent prosecutors from the law firm Kenyon & Kenyon LLP, are located in Washington, D.C.  (Mar Decl. ¶ 9).

Under the 100-mile guideline, Dell's witnesses would be far more inconvenienced by a trial in this District than in Austin.  There are no witnesses in the Eastern District who would be similarly inconvenienced by a trial in Austin.  Therefore, this factor strongly favors transfer.

> 2. *Access to sources of proof is easier in the Western District of Texas.*

As the Federal Circuit has recognized, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

The technical, marketing, and financial documents and things relevant to Dell's websites and the accused services are located in the Western District. (Jones, Horwedel Decls., ¶¶ 5).

27269\2949121.4

Furthermore, UMS is a non-practicing entity that does not develop or sell products. Its business is litigation and patent licensing. Therefore, UMS is unlikely to have voluminous records regarding product development or communications about the inventions claimed in the patents-in-suit. In addition, it is likely that UMS' documents are already in the hands of its outside counsel located outside this District in the Dallas/Ft. Worth area since they were presumably collected for UMS' prior litigation on these patents. This factor weighs in favor of transfer.

      3.     *The availability of compulsory process to secure the attendance of witnesses is neutral.*

This factor applies only to nonparty witnesses. *See Promote Innovation LLC v. Schering Corp.*, 2011 WL 665817 at *3 (E.D. Tex. Feb. 14, 2011) (citing *Promote Innovation LLC v. Ortho-McNeil Pharmaceutical, LLC*, No. 2:10-CV-109 (E.D. Tex. Jan. 12, 2011)). Dell is aware of only one nonparty witness, its supplier Telligent Systems located in Dallas, that may need to attend trial. Because both the Eastern District and Western Districts courts have subpoena power over this nonparty witness, this factor is neutral.

      4.     *The fourth private interest factor concerning presence of "practical problems" is neutral.*

Although UMS has filed another suit in this District asserting the same patents-in-suit,[6] considerations related to judicial economy do not weigh against transfer or outweigh the other factors in this case. Federal courts, including the Supreme Court, have long emphasized that whether and to what extent pending litigation should impact the transfer analysis turns on two issues: (1) whether the pending litigation involves "the same parties, witnesses, evidence and facts" as the proposed transfer case, *e.g.*, *Genentech*, 566 F.3d at 1346; *see also Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960); and (2) the extent to which the remaining section 1404(a)

---

[6] *Unified Messaging Solutions, LLC v. Facebook, Inc. et al*, Case No. 6:11-cv-00120 (E.D. Tex. Mar. 15, 2011) ("UMS 1").

factors favor transfer, *see, e.g.*, *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).  In

addition, just this month this Court recognized that co-pending litigation does not weigh against

transfer if the case is "in its infancy," as is the case here with the two UMS cases.  *Innovative*

*Global Systems LLC v. OnStar LLC*, Case No. 6:10-cv-574, slip op. at 12 (E.D. Tex. Feb. 14,

2012) ("A co-pending suit in its infancy, however, does not increase the Court's familiarity with

the patents-in-suit and therefore does not implicate judicial economy.").  In this case, UMS

cannot show by clear and convincing evidence[7] that its infringement claims in its two pending

Eastern District suits involve substantially similar issues.  UMS asserts claims in UMS 1 against

a broad array of defendants and products, including a dating website, banking companies, and

the popular social networking site Facebook.  Thus, the accused products in UMS 1 are starkly

dissimilar to each other, to say nothing of their relation to the products in this case.  *See, e.g., In*

*re Morgan Stanley*, 417 F. App'x at 949–50 (granting mandamus and ordering transfer based on

convenience factors even though district court had prior experience with half of the patents-in-

suit because "there [was] no relation between the prior suit and the financial products or services

involved").  As the Federal Circuit explained in granting mandamus and ordering transfer in

*Zimmer*, where infringement claims in different suits involve different products and technology,

"it is likely that [the separate] cases will result in significantly different discovery, evidence,

proceedings, and trial" and, thus, denying transfer will not yield any material efficiencies.  *In re*

*Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).

     Likewise, the fact that UMS 1 is pending in this Court does not weigh against transfer

because that case is still "in its infancy."  In *Innovative Global Systems*, this Court ordered a case

---

[7] The Fifth Circuit has observed that this factor is entitled to weight only "in rare and special
circumstances" that are "established by clear and convincing evidence."  *In re Horseshoe Entm't*,
337 F.3d 429, 434 (5th Cir. 2003).

transferred despite co-pending litigation involving the same patents-in-suit and the Court's familiarity with the patents from previous litigation because, as here, the related case was still in the early stages of litigation.  As in *Innovative Global Systems*, the UMS 1 case is still "in its infancy" because the Court has not yet become familiar with the patents, nor has the Court begun construing the claims.  The fact that UMS 1 is also pending in this Court therefore "does not implicate judicial economy" and thus does not weigh against transfer.

In the proceedings against Dell, there will be unique discovery, evidence, and potential non-infringement arguments because, as explained in the above motion to sever, the two accused Dell features are not at issue in UMS's claims against any other defendants in UMS 1 or this case.  Moreover, the UMS 1 case is still "in its infancy," and therefore does not weigh against transfer.  Thus, this factor is neutral.[8]

### C.   **The Four Public Interest Factors Strongly Favor Transfer.**

1.   *The Western District of Texas has a strong interest in deciding this dispute.*

Dell's principal place of business and its teams that led the development and support of the accused products are both located in the Western District, giving that district a strong local interest in this dispute.  *See In re Hoffmann-La Roche*, 587 F.3d 1333,1336 (Fed. Cir. 2009) (holding transferee district had strong local interest because the suit "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").  In contrast, UMS, a non-practicing entity that only licenses and litigates its patents, has no meaningful connection to the Eastern District.  UMS is a wholly owned subsidiary of a larger patent holding company, Acacia, which is based in Newport Beach,

---

[8] As the Federal Circuit explained, even where two suits can be viewed as involving substantially similar issues, the economic considerations associated with this conclusion will not prevent transfer where, as here, other section 1404(a) factors are not in "equipoise," but instead strongly favor transfer.  *See Vistaprint*, 628 F.3d at 1345 n.2, 1346–47.

California, and UMS's officers appear to work in that office.  (Mar Decl. ¶¶ 4–6, Exhs. C–E).

As discussed above and in the attached declarations of Dell employees James Jones and David Horwedel, the development, operation, and marketing of the accused Dell features are led by teams based in Round Rock, Texas.  Given this strong connection to the Western District and the complete absence of meaningful connections to the Eastern District, the Western District's interest in the resolution of this case strongly favors transfer.

2.    *The administrative difficulties flowing from court congestion favor transfer because the median time to trial is faster in the Western District.*

The speed with which a case can come to trial and be resolved is a consideration under this factor. *Genentech*, 566 F.3d at 1347.  However, this factor is speculative and cannot alone outweigh other factors.  *Id.*  In this case, it is in line with the factors favoring transfer.

The latest statistics from the Administrative Office of the U.S. Courts indicate that the median time to trial for civil cases in the Western District is 15.9 months. (Mar Decl. ¶ 8, Exh. G).  The median time to trial for civil cases in the Eastern District, however, 23.7 months, a difference of nearly eight months.  *Id.*  Furthermore, a 2010 study by Mark Lemley showed that for patent litigation in particular, cases in the Western District of Texas are resolved more than three months faster than in the Eastern District.  *See* Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q. J. 401, 414, Table 5 (Fall 2010).  Finally, the recent retirements of several Eastern District judges suggest that this patent case with no viable connection to the Eastern District could put unnecessary strain on the already overburdened Eastern District.

3.    *The remaining two public interest factors are neutral.*

The remaining two factors in the transfer analysis are neutral here.  The factor regarding issues related to conflicts of law and foreign law is neutral because UMS's claims do not present any such issues.  Similarly, the factor related to the transferor and transferee courts' familiarity

- 14 -

with the relevant law is also neutral.  *See Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.*, 2007 WL 433299, at *4 (E.D. Tex. Feb. 6, 2007) ("Patent claims are governed by federal law . . . this factor is neutral as to transfer.")

**D.      On Balance, the Transfer Analysis Factors Strongly Favor Transfer to the Western District of Texas.**

One private interest factor and one public interest factor strongly favor transfer, one private interest factor and one public interest factor favor transfer, and the remaining factors are neutral.  There is no reason that this District should hear UMS's claims against Dell, which has its corporate headquarters and principal place of business in the Austin area.  UMS should not be allowed to maintain venue here by merely listing a mailing address in the District when it fails to identify a single witness or employee in the district with relevant knowledge, and the relevant acts giving rise to its claims all occurred in the Western District.  *See In re Apple, Inc.*, 2010 WL 1922942, at *1 (Fed. Cir. May 12, 2008).

This case mirrors *Genentech* because there are a significant number of witnesses located in the Western District but there are no likely witnesses in this district. *See* 566 F.3d at 1345 (rejecting physical location of Eastern District as source of convenience when no witnesses were located in that forum); *see also Verizon*, 635 F.3d at 562 (concluding that Northern District of Texas was "far more convenient" than the Eastern District where many witnesses resided in Northern District and none resided within 100 miles of the plaintiff's chosen forum).

**V.      CONCLUSION**

This action improperly lumps together separate and distinct claims against two features of Dell's website with unrelated claims against nine other defendants.  Dell therefore respectfully requests that the Court grant its motion to sever UMS's claims against Dell and transfer those claims to the Western District of Texas.

27269\2949121.4

Dated: February 28, 2012                              Respectfully submitted,


                                                     /s/ Deron R. Dacus
                                                     _____
                                                     Deron Dacus
                                                     TX State Bar No. 00790553
                                                     The Dacus Firm, P.C.
                                                     821 ESE Loop 323, Suite 430
                                                     Tyler, TX 75701
                                                     903/705-1117
                                                     ddacus@dacusfirm.com

                                                     Roderick M. Thompson,
                                                     CA State Bar No. 96192
                                                     (*pro hac vice*)
                                                     rthompson@fbm.com
                                                     Eugene Y. Mar,
                                                     CA State Bar No. 227071
                                                     (*pro hac vice*)
                                                     emar@fbm.com
                                                     Janel Thamkul,
                                                     CA State Bar No. 261122
                                                     (*pro hac vice*)
                                                     jthamkul@fbm.com

                                                     FARELLA BRAUN + MARTEL LLP
                                                     235 Montgomery Street, 17th Floor
                                                     San Francisco, CA  94104

                                                     ATTORNEYS FOR DEFENDANT
                                                     DELL INC.

27269\2949121.4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of February, 2012, with a copy of this document via electronic mail.

/s/ Deron Dacus
Deron Dacus

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that Dell's counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that the foregoing motion is opposed.  The parties met and conferred on January 20, 2012 via telephone, and the participants were Eugene Mar for Dell and Ed Nelson for UMS.  Counsel for the parties disagreed over whether severance and transfer was appropriate in this case. As such, discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Deron Dacus
Deron Dacus

27269\2949121.4